JOHN RODEN *vs.* THE CONNECTICUT COMPANY ET AL.

First Judicial District, Hartford, May Term, 1931.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued May 6th—decided July 14th, 1931.

*Joseph F. Berry,* for the appellant (defendant The Connecticut Company).

*Frederick B. Hungerford* and *Morris D. Saxe,* with whom was *Harold J. Eisenberg,* for the appellee (plaintiff).

MALTBIE, C. J. This action was brought against the appellant The Connecticut Company and another defendant and resulted in a verdict and judgment against both, from which The Connecticut Company has appealed. We shall hereafter refer to it as the defendant. The plaintiff, a boy seven years old, rode as a passenger in a bus of the defendant from New Britain to the end of its run on Farmington Avenue. The street was macadamized to about this point and then became a dirt road. When the bus reached the end of its run the driver drove it toward the left side of the road, so that at least a part of it was upon the

shoulder of the roadway. The only door in the bus used by passengers was upon its right side, that is, as it stopped on the side toward the macadam. The driver opened the door and the plaintiff descended the steps to the macadam of the roadway, to go to his home on the opposite side of the street. He was struck by an automobile truck proceeding in the same direction as the bus and received the injuries for which he sought a recovery in this action.

The duty of a common carrier of passengers includes an obligation to furnish them a safe place in which to alight, as far as that place is provided by it or is affected or conditioned by the movement of the vehicle, and that duty is only satisfied if it exercises the highest degree of care and skill which reasonably may be expected of intelligent and prudent persons engaged in such a business, in view of the instrumentalities employed and the dangers naturally to be apprehended. *St. John* v. *Connecticut Co.,* 103 Conn. 641, 644, 131 Atl. 396; *Belledeau* v. *Connecticut Co.,* 110 Conn. 625, 627, 149 Atl. 127. An automobile bus is able to move or stop in the street at the will of its driver and the safety of the place he offers its passengers to alight may be affected or conditioned by the passing traffic. *Cleveland-Akron-Canton Bus Co.* v. *Walker,* 30 Ohio App. 411, 165 N. E. 373. The care to be exercised toward a young child traveling by himself must be proportioned to the degree of danger inherent in his youth and inexperience. *Brennan* v. *Fair Haven & W. R. Co.,* 45 Conn. 284, 298; *Rohloff* v. *Fair Haven & W. R. Co.,* 76 Conn. 689, 694, 58 Atl. 5; *Boland* v. *Connecticut Co.,* 83 Conn. 456, 457, 76 Atl. 1005. When, however, the duty of the carrier to provide a safe place to alight has been fulfilled and the passenger has left the vehicle it ceases to owe to him any duty other than that which it owes to any

person coming within the range of its activities, not to do him injury by a failure to exercise reasonable care. *Powers* v. *Connecticut Co.,* 82 Conn. 665, 669, 74 Atl. 931.

Taking the evidence in its most favorable aspect to the plaintiff, as we must do, the jury might reasonably have found the following facts: There was no reason why the bus might not have been stopped upon the right-hand side of the street, so that the plaintiff could have alighted upon the grass at the side of the road, or might not have discharged its passengers at one side or the other of a street which intersects Farmington Avenue close to the point where the bus stopped and which was generally used by buses ending their run at this point to turn around. The bus stopped with the wheels of one side upon the macadam and those of the other upon the shoulder of the road. The highway curved just before the place where the bus stopped, in such a way that the view of anyone on that side of the street was much restricted; indeed, standing on the edge of the macadam, one could not see automobiles approaching until they were about two hundred feet away. The step of the bus is inset in such a way that a view to the rear by anyone alighting is somewhat obstructed by the side of the vehicle. There is no evidence as to the amount of traffic upon the street but the fact that it was macadamized at the place of the accident might reasonably be taken to indicate considerable passing of vehicles and certainly the possibility of automobiles approaching and passing the bus when it stopped was present. As the bus came to a stop an automobile truck and another car were approaching from the rear, one proceeding upon its right side of the road and the other a little to the rear and more to its left, both coming fast and apparently racing. When the bus stopped the

truck was quite close to it, one witness putting the distance at twenty to twenty-five feet. The driver of the bus gave no warning to the plaintiff as he alighted, and so far as appears took no precaution to see if any vehicles were approaching so near as to be likely to run into him. The automobile truck struck the plaintiff and caused him serious injury. It is true that the plaintiff testified that before he put his foot upon the step of the bus he leaned out, looked both ways and saw no vehicles approaching and that he had proceeded almost across the roadway before he was struck; and the evidence placed his body after the accident as lying on or a little beyond the edge of the macadam upon the side of the street opposite the bus. But he was rendered unconscious by the accident and remained so for some days and considering this fact and his youth, the jury might have concluded as an inference from the evidence in regard to the position and speed of the approaching automobiles that his testimony could not be accepted in these respects; *Kanopka* v. *Kanopka,* 113 Conn. 30, 154 Atl. 144; and they might reasonably have concluded that the position of the body was due to its being thrown by the force of the collision. They could have found that the plaintiff was struck almost as soon as he reached the street.

In *St. John* v. *Connecticut Co.,* 103 Conn. 641, 646, 131 Atl. 396, we held that it is not ordinarily the duty of the motorman upon a trolley car to warn passengers alighting in the street of the danger likely to arise from approaching automobiles. Whether that rule would apply in its full scope to the driver of a bus who, by stopping it and opening the door, invites a seven year old boy to alight in the traveled portion of a paved highway we have no occasion to consider. In the instant case the driver had abundant opportunity to

let the plaintiff out at the side of the road, off the highway, in a place of safety. Yet, instead of doing so, he chose to invite him to alight upon the macadam of the street at a time when the jury might have found that the automobiles were approaching in such a way as to endanger him as he stepped upon the pavement and when, had the driver looked with any care to the rear, he must have seen them. Especially in view of the age of the plaintiff, the conclusion of the jury that the defendant failed to exercise that high degree of care which it owed to him as a passenger was an entirely reasonable one.

The defendant's breach of duty was in failing to use proper care in this respect. As we have said, the jury might have found that the plaintiff was struck almost as soon as he was in the street. It is true that upon the evidence they could hardly have escaped the conclusion that the driver of the truck was also negligent and that, had he not been so, the accident would not have happened. We certainly cannot say, however, as a matter of law, that the defendant's breach of duty did not constitute a substantial factor in producing the accident, so that it was a concurring cause rather than a remote circumstance which merely gave rise to the occasion for the injury. The question was fairly one of fact for the jury. *Mahoney* v. *Beatman*, 110 Conn. 184, 194, 197, 147 Atl. 762. No question is raised as to the reasonableness of the jury's conclusion that the plaintiff was not guilty of contributory negligence and upon all the evidence we cannot say that the trial court was in error in refusing to set the verdict aside.

The appellant complains of a portion of the charge in which the trial court said: "Now it is the law that a bus should discharge passengers, where practical, on the right-hand side and the rule of the public utilities

commission has been called to your attention: 'No jitney shall stop to receive or discharge passengers at any other place than the curb or side of the traveled way or regularly established parking place when the same are accessible.' " The appellant does not claim that this was not a correct charge, provided the trial court had a right to base it upon the rule in question. In order to present the matter it seeks to raise the appellant requested the trial court to include in its finding a verbatim report of the proceedings on the trial where the plaintiff offered in evidence a certified copy of the rule and, the trial court having refused the request, now seeks to have the finding amplified to include this matter. As it is necessary to present the question of law the defendant seeks to raise we correct the finding in accordance with its request. From this it appears that when a copy of the rule was offered, the appellant objected because, it said, the claim sought to be raised did not agree with the allegations of the complaint, and after some discussion the following occurred: "The Court. I don't believe I will submit this to the jury, but I will take it under consideration in reference to charging the jury. Mr. Hungerford. My notion was that we should offer in evidence the rule. The Court. If it seems applicable I will comment on it in my charge, if it does not of course I won't. I don't believe I'll submit it to the jury as an exhibit." To this ruling the plaintiff took an exception but the defendant did not. Its present contention is that, not having been admitted in evidence, the trial court should not have charged the jury in regard to it. The ruling of the trial court indicates that it was of the opinion that it might take judicial notice of the rule, and it dealt with the matter accordingly. The defendant took no exception to the course proposed by the court, acquiesced in the disposition made

of the matter at the time, permitted the trial to proceed upon that basis, and made no objection until after the verdict was rendered. It is hardly in a position to assert the claim it makes. But, that aside, inferentially at least in its brief, it concedes that the trial court committed no error if it might take judicial notice of the rule. It is often said that courts take judicial notice of such things as are of common knowledge. These may be matters which come to the knowledge of men generally in the course of the ordinary experience of life, and are therefore in the mind of the trier, or they may be matters which are generally accepted by mankind as true and are capable of ready and unquestionable demonstration. *Hygeia Distilled Water Co.* v. *Hygeia Ice Co.*, 70 Conn. 516, 534, 40 Atl. 534; *De Luca* v. *Park Commissioners*, 94 Conn. 7, 9, 107 Atl. 611; *Masline* v. *New York, N. H. & H. R. Co.*, 95 Conn. 702, 708, 112 Atl. 639; Thayer, Preliminary Treatise on Evidence, p. 301; 5 Wigmore, Evidence (2d Ed.) § 2571. In the application of this test courts have naturally reached varying conclusions. We have refused to take judicial notice of the orders of a local board of health; *State* v. *Tyrrell*, 100 Conn. 101, 122 Atl. 924; and of the ordinances of a city. *Appeal of Phillips*, 113 Conn. 40, 44, 154 Atl. 238. The means to ascertain what orders of such boards or what ordinances of a city are in effect at any particular time, without change or amendment, are certainly not reasonably available to the courts and frequently they are not capable of ready and unquestionable demonstration. The regulations of such an administrative board as the public utilities commission occupy a very different situation. By statute all its orders are required to be recorded and its books of record are made public documents. General Statutes, § 3586. It is authorized to appoint a secretary and does in fact ap-

point one; General Statutes, § 3583; State Register and Manual; and it is within his power to certify copies of its orders and regulations. General Statutes, § 5602. The commission is given express authority to make regulations as to the operation of motor buses, including such as concern the convenience and safety of passengers and the public. General Statutes, § 3850. We have no reason to think that the ascertainment of the regulations of the commission concerning such matters is difficult, clouded with uncertainty, or reasonably questionable. As far as appears they fully meet the test suggested by Wigmore: "They would be capable of such instant and unquestionable demonstration, if desired, that no party would think of imposing a falsity on the tribunal in the face of an intelligent adversary." Wigmore, Op. Cit., § 2571. While authorities dealing with similar situations are not unanimous, there is a growing tendency of the courts to take judicial notice of regulations of such boards and commissions under such circumstances. *Caha* v. *United States*, 152 U. S. 211, 221, 14 Sup. Ct. 513; *Campbell* v. *Wood*, 116 Mo. 196, 202, 22 S. W. 796; *Low* v. *Hanson*, 72 Me. 104, 105; Wigmore, Op. Cit., § 2572 (p. 583). We conclude that the trial court was correct in considering that it had the right to take judicial notice of the regulation a copy of which was placed before it under the certificate of the secretary of the commission.

The defendant complains of other passages in the charge. Except as to one its contentions are based upon the claim that as the plaintiff had alighted from the bus, it no longer owed to him the high degree of care required of it as to passengers and that any breach of duty in failing to afford him a safe place to alight could not, as a matter of law, be held to be a proximate cause of his injury. The trial court properly based the plaintiff's right to recover, if any, upon the

breach of the defendant's duty in failing to afford him a safe place to alight, and the question whether such a breach of duty, if found to exist, was a proximate cause of the plaintiff's injury was properly submitted to the jury as one of fact. The simple illustration used by the court in the other passage from the charge of which complaint is made could not have misled the jury.

There is no error.

In this opinion the other judges concurred.